UNITED STATES *v.* WHALEY *et al.*

*(Circuit Court, S. D. California.* December 15, 1888.)

INDIANS—HOMICIDE—STATUTES—NOTICE.

Act Cong. March 3, 1885, provides that "immediately upon and after the passage of this act all Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter," etc., shall be subject to the same laws, and tried in the same courts, as are all other persons. *Held,* on indictment of Indians for the killing of another Indian, in obedience to tribal resolutions, that it was no defense that defendants never had notice of the statute.

Indictment of Bill Whaley, Pancho Francisco, Salt Lake Pete, and Juan Chino, (Indians,) for murder.

*George J. Denis,* for the United States. *George W. Knox,* for defendants.

Ross, J. The defendants, who are Indians, are charged by the indictment in this case with the murder of one Juan Baptista, also an Indian, committed on the Tule River Indian reservation, within the state of California, all of the parties at the time sustaining the usual tribal relations. When the case was called for trial the district attorney stated that the proof would be such that a verdict of guilty of murder could not be procured, nor could he contend for it, and therefore consented that the defendants be permitted to withdraw their plea of not guilty, and enter one of guilty of manslaughter, which they desired to do. That was accordingly done. To enable the court to give proper judgment, the counsel for the respective parties then agreed upon most of the facts of the case; and as to one or two points, upon which they were not entirely agreed, witnesses were, by their joint request, heard. These proceedings developed this state of facts: The defendants were members of an Indian tribe, domiciled upon the reservation named, and the deceased was an Indian doctor, who, in the course of his treatment of the members of the tribe, had been so unsuccessful as to induce the belief on the part of its members that he had been systematically poisoning his patients. About 20 of their number had been treated by him, and under his treatment each of them had died. Finally one Indian, Hunter Jim by name, who was a favorite with the tribe, became, under the doctor's treatment, very sick. The members of the tribe held a council, and informed the doctor that if Hunter Jim died they would kill him. Jim did die. A council was held, at which it was determined to kill the doctor, and the four defendants were appointed to carry into effect that determination, which they did, upon the reservation, the following morning, by shooting him.

Had this homicide been committed prior to the passage of the act of congress of March 3, 1885, this court would have had no jurisdiction of the offense, for the government of the United States had theretofore permitted the Indians preserving their tribal relations to regulate and govern their own internal and social relations. But by the act of 1885 congress made a radical change in that policy, and therein enacted:

v.37 F.no.4—10

"That immediately upon and after the date of the passage of this act all Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, arson, burglary, and larceny, within any territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts, and in the same manner, and shall be subject to the same penalties, as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases; and all such Indians committing any of the above crimes against the person or property of another Indian or other person, within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts, and in the same manner, and subject to the same penalties, as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States." 23 St. c. 341, p. 362, § 9, p. 385.

The case of these defendants falls within the last class of cases provided for by this law. The counsel for defendants contend with much earnestness that the law in question should not be held to apply to them; for the reason, as it is claimed, that they had no notice of it. If that view should be adopted by the court, the plea of guilty of manslaughter, entered by the defendants, could not be permitted to stand, for of course the court would not enter judgment in a case of which it had no jurisdiction. The validity of the act in both of its branches was determined by the supreme court in the case entitled *U. S.* v. *Kagama*, 118 U. S. 375, 6 Sup. Ct. Rep. 1109. Its terms are plain, and clearly embrace the offense for which defendants were indicted. Congress did not see proper to provide that the law should not take effect until the Indians should be notified of its provisions, but, on the contrary, enacted that immediately upon and after the date of the passage of the act all Indians committing any of the offenses described, within the designated places, shall be subject to the laws therein prescribed. Clearly the court cannot hold the law inapplicable to any Indian who comes within its provisions. While the offense committed by the defendants would, if committed by a white man, have of course been murder, it may be, in view of the Indian nature, their customs, superstition, and ignorance, that in the circumstances attending the killing of the doctor there was wanting the malice that is essential to constitute the crime of murder. It was that view that prompted the district attorney to say that he could not contend for a verdict of guilty of murder, and to consent to the withdrawal of the plea of not guilty, and to the entry of a plea of guilty of manslaughter. And since justice should be tempered with mercy, perhaps the court may be justified, in imposing sentence, in being moved by the same considerations, and in inflicting a punishment which, under ordinary circumstances, would be considered far too light for so atrocious a crime. The judgment of the court is that the defendants Bill Whaley, Pancho Francisco, Salt Lake Pete, and Juan Chino, and each of them, be imprisoned in the State Prison at San Quentin for the period of five years from this date, and pay a fine of one dollar.